Move to the fourth case, Victoria-Faustino v. Lynch. Mr. Thoman. Good morning, Your Honors, and may it please the Court. My name is Daniel Thoman. I represent the petitioner, Flaviano Victoria-Faustino. The petitioner raises two arguments on appeal before this Court today. The first is that Section 1228B of Title VIII of the U.S. Code does not authorize the Department of Homeland Security to issue removal orders or enact the regulations implementing that section. The second argument is that petitioner is not subject to removal under that section of law because he was not convicted of an aggravated felony under AUSC 1101-AS. Regarding the first argument, Section 1228B, Title VIII of the U.S. Code provides for the expedited removal of certain aliens who have not been admitted to lawful permanent resident status and who have been convicted of an aggravated felony as defined under Section 1101 of the INA, I'm sorry, the AUS Code. This system of expedited removal was fine when initially enacted because the authority of the Attorney General in Immigration Matters went to the Immigration and Nationality Service, the INS. In 2003, with the creation of the Department of Homeland Security, the authority of the Attorney General for the enforcement portions of the immigration laws was moved over to the Department of Homeland Security, which was then newly created. So let me talk to you about the record as well. There's no evidence at the appellate level in our record that the petitioner responded to DHS's notice of intent to issue a final administrative removal order, right? So how do you respond to the government's arguments that this deprives us of jurisdiction to hear the petitioner's arguments? Your Honor, petitioner, the response to the notice of intent, had the box checked that he wished to contest and also apply for the available relief at that time, which would have been withholding of removal and relief under the Convention Against Torture. The fact that he indicated his desire to contest the finding that he's removable essentially is a response. He is not making any arguments now that he could have raised at that time for one thing because the very fact that he was in these types of proceedings deprived him of the opportunity to make any other argument. Further, Your Honor, the petitioner at the time was unrepresented by counsel and the legal challenge that he is making to the determination of the Department of Homeland Security is something that someone in his position could not be expected to articulate as they were pro se detained and within a 10-day period provided. So by indicating that he wished to contest the charge, that essentially is his answer. He's saying, no, I am not removable under this section. I have not been convicted of this offense. And at that junction is exactly why we see the importance of an immigration judge, not an immigration officer, being responsible for issuing removal orders under this section of law because it is a complicated matter. And that was typically all falling under the authority of the Attorney General was not a problem. But now we've moved that authority over to DHS. And we see in other sections of the code where similar things have happened in expedited removal context. For example, in Section 1225, for encounters at the border, the statute expressly authorizes immigration officers to issue removal orders. But we don't have any such corresponding delegation within 1228B. So the default should be that that authority remains with the Attorney General as it does traditionally. The authority to issue removal orders has always been with immigration judges. And even with the enactment of the Homeland Security Act and a transfer of most immigration-related authority to the Department of Homeland Security, we still have Section 1103A1 of Title VIII, which reserves to the Attorney General authority over those matters that have traditionally been within the purview of immigration judges. And the issuance of removal orders is one such area. This case presents a big reason why that authority should remain with immigration judges who conduct other types of proceedings remotely for individuals who are detained. They do televideo for people that are incarcerated in state prisons where the immigration judge can address some issues and forego the formal removal process. So the system is in place to do this, and this is what should happen. An immigration judge would have looked at this conviction and likely taken a different approach than the immigration officer who adjudicated this case did, which actually goes into our second argument here, is that the offense that petitioner was convicted of is not an aggravated felony. They should have subjected him to removal under Section 1228B. The categorical approach is what the Supreme Court has made very clear applies to the determination of aggravated felonies in the immigration context. In this case, the section of law that petitioner was convicted of is 720-ILCS-531-4, which refers to obstruction of justice as the corresponding aggravated felony, but it criminalizes action taken to prevent the apprehension of or obstruct the prosecution or defense of any person, which is a pretty general set of things that you can do to fall under that. We have to look at whether that state statute corresponds categorically to the offense of obstruction of justice as contemplated in the aggravated felony provision of the immigration law. The problem is that that part of the immigration law is quite vague. The term obstruction of justice, or rather relating to obstruction of justice, is not elsewhere defined. So then we turn to the authority from the Board of Immigration Appeals, which has taken a crack at this and has essentially given us some guidelines on what this should mean. The problem here is that with this particular offense, the board's precedent on the matter does not really give us any guidance. The board in Espinoza-Gonzalez stated, we do not believe that every offense that by its nature would tend to obstruct justice is an offense that should properly be classified as obstruction of justice. So we don't really know what fits and what doesn't fit for the aggravated felony. Subsequent to that, some case law developed coming out of the Ninth Circuit, which led to a new BIA decision, a matter of Gallardo, where the board essentially said that what they need is evidence of, I'm sorry, that they do not need evidence of a proceeding to be going on at the time, that a proceeding be interfered with. What they said is that what's necessary is only interference with the process of justice. But they did not define what this process of justice is. So in that case at the Ninth Circuit, Valenzuela-Gallardo v. Lynch, the Ninth Circuit essentially said to the board, well, you're giving us this idea of a process of justice that you don't define, and you tell us that there doesn't actually have to be a proceeding in place at the time for the offense to be obstruction of justice. So we still don't know what obstruction of justice is. It's never been cleared up. And under the categorical approach, because the Illinois statute covers such a broad range of conduct, it cannot be shown that this actually fits. It's not a categorical match. And so the Petitioner should not be subject to expedited removal under Section 1220AB. There was not any question that he lied to a police officer. Is that the obstruction? I believe so, Your Honor. My understanding is that it was a traffic stop, and I think he stated a different name. A different name because he didn't have a license, I guess. I believe that's correct, Your Honor. Yes. And that actually shows us, I mean, the types of conduct that can be criminalized under the Illinois statute is quite broad. Traffic stop doesn't have to be lawful. It doesn't have to be directed at the driver. Pretty much any instance in which a person obstructs your own identity for any reason without regard to whether there is an underlying investigation or prosecution falls under that Illinois statute. And that's just not correct to lump every violation of that into an aggravated felony relating to obstruction of justice. This is consistent with what the Ninth Circuit held in Gonzalo Gallardo, and I think that this Court should adopt that same reasoning. The board hasn't, the agency hasn't defined the term of what exactly fits under this relating to an obstruction of justice offense in such a manner that categorically there can be a fit with the Illinois statute. Any reference to the federal criminal provisions in Title 18 relating to obstruction of justice involve conduct that is far more overtly intended to obstruct. And I see that my time has expired. As to your first argument, Justice Tillman, no circuit has accepted your position, right? Your Honor, that's correct. It's an argument that's recently begun being raised, but significantly the Tenth Circuit and ASUNA did not consider in that decision some of the arguments we made. They did not address the delegation argument, and they also did not address the fact at all that Section 1225 does contain an express delegation to immigration officers, which is not found in 1228B. Thank you, Justice Tillman. Mr. Nzinga? Good morning, Your Honors. May it please the Court, Andrew Nzinga on behalf of the Attorney General. After providing Petitioner an opportunity to respond to the notice of intent, which Petitioner did not respond to, DHS properly determined that his conviction for obstruction of justice was a crime relating to obstruction of justice. So your position is that checkbox is meaningless? He didn't check it. DHS AR 24, he did not check the box. Part of Petitioner's, the problem with Petitioner's exhaustion claim, made for the first time at oral argument, is that it's factually incorrect. He did not check the box. He refused to acknowledge the receipt of the notice of intent to issue the order at all. He did request withholding removal. Had he checked the box, separate procedures would have come into play, which explains why exhaustion is so important under this Court's decision in Fonseca-Sanchez. If he had marked that box, a different process would have gone on. He could have been in front of an immigration judge making these decisions because DHS could have decided to issue a notice to appear in 240 proceedings. DHS could have said, we're not even going to go ahead. DHS could have taken a variety of actions that would have impacted this case. There was an administrative remedy as of right, and he failed to take advantage of it. Again, for the first time, he comes to this Court and says, well, I'm an alien. I'm uneducated. How am I supposed to know? This Court rejected that argument just recently in Echevarria-Reyes on the decision issued December 30th of 2016. The Court said the statute does not excuse an alien from exhausting his administrative remedies simply because he's uneducated or unaware. It's simply not an excuse to the statutory requirement. He was not represented by counsel at that point, right? He was not. The notice of intent told him he was allowed to have an attorney if he chose to have one. He also was allowed to have an attorney for the immigration judge when he did request withholding removal. He also chose not to have an attorney there. He simply chose not to avail himself of the opportunity to respond. That does not mean he did not have the opportunity. He had it. He did not take advantage of it. Now, he argued that the statute was vague. If the statute isn't clear regarding what constitutes a crime relating to obstruction of justice, then how can lawyers adequately advise their clients regarding the immigration implications of a plea bargain? They can't. Because Padilla does not require that immigration lawyers know exactly the nature of what the possible consequence of that conviction may be. The Ninth Circuit's decision essentially, which basically is the entirety of Padilla's argument, is basically driven by this concern. Except what we have to look at are two separate issues, ambiguity and vagueness. Obviously, to a layperson, semantically they sound the same thing. The statute is ambiguous. Congress is allowed to create ambiguous statutes and allow the attorney general and her delegates to explain that. That's part of how statutes become explained in this context. It's ambiguous. The court has to defer or should defer to the agency's interpretation. When we get to the vagueness concern, which is several steps later, what Padilla ignores and the Ninth Circuit ignores is that vagueness has two underlying rationales. The most important is fair notice. The difficulty, though, is fair notice in this context is very different than fair notice in the criminal context. Congress may and has taken a past action, a completed action, and said, we are now going to remove you on that basis. That's not acceptable under criminal law because of the ex post facto clause. But Congress may do it. An example is, for example, Petitioner was convicted in 2015 of a felonious DUI. That's how it came to the DHS's attention. That's not currently a basis to remove an alien. If Congress were to choose to change the law and say, we're going to say any DUI will make a removal regardless of it when they did it, Congress may do that. So the Ninth Circuit's Padilla concerns ignore Padilla itself. In fact, I think Padilla, the parenthetical the Ninth Circuit provides, frankly, misstates the holding of Padilla. It says, the Ninth Circuit claims that Padilla says that the attorney must warn of the actual immigration consequences of the conviction. Except what the Supreme Court made clear is, it's not always certain exactly what's going to be the consequence of the conviction. So all the criminal attorney must do is say, well, this might have immigration consequences. So the Ninth Circuit's vagueness concerns are basically based on its misunderstanding of Padilla. So when we look beyond the Ninth, when we look at the Ninth Circuit's analysis, it fails to really take that into account. Turning briefly to... No, I just want to ask you this. Can you clarify what arguments you believe are not appropriately before us because of the petitioner's failure to file a response to the notice? All of them. All of them. And if we find the petitioner failed to exhaust, can we consider any of his constitutional arguments? No. Fonseca Sanchez is fairly strict about that. Fonseca Sanchez involved a claim that the ICE agents that had issued the notice could not resolve. But this court said, it doesn't matter that it couldn't resolve the actual issue. There was a remedy that could be had. DHS could have taken other steps. Part of what's interesting now is the petitioner says, well, what I really want is a 240 removal hearing. He could have asked DHS for a 240 removal hearing. All this time, while he was detained, could have been avoided had he asked for that. But he did not do that. Otherwise, petitioner's arguments on the DHS's authority have been accepted by no court. Osuna Gutierrez of the Tenth Circuit rejects all of them. Petitioner comes now for the first time to oral argument, mentions 1225. Regardless of his failure to ever raise this issue before 6 U.S.C. 251, it transfers authority from the former INS to DHS. The Congress explicitly told DHS, create an implementation plan for how you're going to deal with expedited removal. Petitioner's argument essentially ignores 20 years of legislative history, variety of statutes, and common sense. Congress was transferring the former INS to DHS in order to consolidate the government authority, not get rid of it, or not force some method that has never been used before. So accordingly, we ask that the court dismiss and deny the petition for review. Thank you. Mr. Tolman. Thank you, Your Honors. Just a couple of things on rebuttal. First, regarding the checkbox issue at AR-24, I think that the confusion is about what box was checked and what wasn't. There's a box checked that says, I wish to contest and order request withholding of removal. After that, there is a separate section with a box for somebody to check if they wish to contest their deportability because. And then it lists four specific grounds, none of which apply in this case. There isn't one that says, this is not an aggravated felony. There isn't one that says, this is an unfair process that I wish to challenge. So that's just simply not an option, again, for a pro se detained individual. Also, regarding Fonseca Sanchez, the difference with that case is that the petition saw review of the denial of a U visa from Citizenship and Immigration Services, not a challenge to the actual FARO, to the actual final administrative removal order. This case is about the final administrative removal order. So by checking that box and expressing the wish to contest the charge, that satisfies that requirement. And I see my time is up. I thank Your Honors. Thank you, Mr. Tolman. Thank you, Senator. Case is taken under advisement.